WILL OF STARK: INBUSCH and others, Appellants, vs. FIRST WISCONSIN TRUST COMPANY, Trustee, and another, Respondents.

*January 16—February 10, 1931.*

614

616

618

For the appellants there were briefs by *Bloodgood, Steb-*

*bins & Bloodgood,* attorneys, and *Albert K. Stebbins* of counsel, all of Milwaukee, and oral argument by *Mr. Stebbins.*

For the respondents there was a brief by *Upham, Black, Russell & Richardson* of Milwaukee, and oral argument by *William E. Black.*

For the Stark Hospital there was a brief by *Quarles, Spence & Quarles,* and oral argument by *Howard T. Foulkes* and *William C. Quarles,* all of Milwaukee.

ROSENBERRY, C. J.  A careful perusal of the will of Charles G. Stark leaves one with a definite impression that the dominant purpose and object of the testator as disclosed in the items of his will printed in the margin were to provide hospitalization for such "poor, neglected, and destitute children of the age of fourteen years and under who are sick, and who, on account of ill health, need medical and other care and attention, as the managers by law or by their rules may agree to receive."

This being the dominant purpose of the testator, he sought

by the other clauses to insure its accomplishment and to that end provided:

"But the foregoing bequest of $125,000 for the use and benefit of said hospital is made upon the following express conditions, namely: that within four years from the death of my said wife said hospital (1) shall and must be legally incorporated and organized as a corporation, (2) that a site for the hospital building shall be selected and absolutely secured with an assured title thereof in such corporation, and (3) that a contract for the construction of such building to cost, fully completed, not less than $50,000 shall be arranged for and made, all to the satisfaction of the trustees or directors and officers of such corporation and of Abbott Lawrence; (4) compliance with which conditions and each of them shall be essential to make operative the trust and provisions herein expressed and contained for the use and benefit of said children's hospital."

The will then provides that on failure to comply with and fulfil all, any, or either of the terms and conditions and provisions for the children's hospital, the bequest shall pass into and become a part of the residue of his estate.

It is argued and is quite apparent from the terms of the will that the testator placed great confidence and reliance

upon his friend, trustee, and executor Abbott Lawrence. This
appears from the remaining provisions of the will more fully
set out in the margin. However, before the time for carry-
ing the will into effect, so far as the establishment of the
hospital was concerned, Mr. Lawrence died, and one of the
claims made upon the argument was that so much having
been committed to the judgment and discretion of Mr.
Lawrence, and especially in view of the fact that the testa-
tor may have given private directions to Mr. Lawrence, it
now became impossible to execute the trust. That the testa-
tor contemplated the existing situation is indicated by the
fact that in his will he provided:

"In case of the death of said Abbott Lawrence, pending
the trusts hereby created, of which he is herein appointed
trustee, I desire that his successor as trustee in said several
trusts be appointed by the Milwaukee county court in pro-
bate."

While it is no doubt true that the testator expected and
hoped that his friend would survive him and the testator's
wife and so act for him in the execution of the trust, he
contemplated the contingency which in fact did subsequently

arise, that is, that the execution of the trust being postponed until the death of his wife, she might survive Mr. Lawrence. Clearly under the will the powers were committed to Mr. Lawrence as trustee. His successor appointed by the county court of Milwaukee county, pursuant to the provisions of the will, succeeded to all of the powers conferred upon Mr. Lawrence as trustee.

It is argued that because the testator was an Episcopalian and provided by his will that the rector and wardens of St. Paul's congregation, of which he was a member in his lifetime, should be members of the corporation, it was his intention to create an Episcopal hospital. It is conceded that it was the design and purpose of the incorporators to make the organization as non-sectarian as possible, and so there are found upon its board persons representing widely different religious organizations as well as some who are communicants of no church. We discover nothing in the terms of the will that required Stark Hospital to be incorporated as a sectarian organization nor anything that required the maintenance of a chapel or other facilities for conducting religious services.

Perhaps the most serious challenge made on behalf of the residuary legatees is that by the terms of the will it appears to have been Mr. Stark's intention to have established a separate institution to be known as the Stark Hospital and that the terms of the contract with the Milwaukee Children's Hospital are such as to defeat the purpose and intention of the testator and make the Stark Hospital a mere annex to the Milwaukee Children's Hospital. We have given this contention the most careful consideration. It appears by the plans and specifications that when the building is erected it will stand upon land owned in fee simple by the Stark Hospital and that it will have its own board of managers. While it will be supplied with heat, nursing, and kitchen service by the Milwaukee Children's Hospital, such services are furnished under such circumstances as to give the managers of the Stark Hospital full, absolute, and unconditional control over the same. The real question presented here is whether or not the testator's purpose to establish a children's hospital should be defeated because it cannot be carried out as he no doubt thought twenty-five years ago it would be, or whether, having regard to present conditions, his in-

tention should be effectuated in a manner slightly different than any which may have been contemplated by him at the time of his death. Mr. Stark was quite evidently not only a highly intelligent man but was possessed of unusual foresight and acumen. He necessarily therefore left much to the discretion of his trustees. The building of a unit small enough to be maintained as a separate organization having its own heating plant, servants' quarters, etc., would be so inadequate as to be almost futile. The plan now suggested by the corporation gives much greater effect to the testamentary wishes of Mr. Stark than a plan which would attempt to embody the ideas which he may have had in his 'lifetime. The realization that some such situation might exist is no doubt one of the things which prompted him to give such broad discretionary power to the trustee. Turning now to the more specific provisions of the will, we find that the first condition of the will, relating to the incorporation and organization of the hospital board, is fully complied with; that the second provision, relating to the site for the hospital building, is, under the findings of the court and the evidence, fully complied with for the reason that the Stark Hospital, upon the proposed plan being given effect, will become the owner in fee simple of two lots upon which it will erect its building; that the architect's plans and the proposals made by the contractors are also in literal compliance with the terms of the will. Especial emphasis is placed upon the following provision of the will:

"Fifteen thousand dollars of said fund of $125,000, with the income thereof, I will and direct shall be used to endow and maintain two free beds in said hospital, in perpetuity, one to be known as the Sarah Bed, and the other as the Lucy Bed."

It appears that the testator had married sisters, his first wife being Sarah and the second one Lucy, hence this provision of the will. It is argued that under the contract made

between the Stark · Hospital and the Children's Hospital these beds will not be maintained in perpetuity because of the provisions contained in the contract, by the terms of which, at the expiration of twenty years and at the expiration of each subsequent five-year period, the contract may be terminated and the Stark Hospital may cease to be the owner. It is to be noted that the testator made no attempt to fasten this condition upon the title to the premises when acquired. If and when the Children's Hospital takes over the proposed building in accordance with the appraisal, it will be obliged to pay to Stark Hospital the appraisal value. This fund will then be impressed with the same trust as is the present fund and the then trustee will be under obligation to execute the trust as it is at the present time. We see no reason for saying that this provision of the will is not under the proposed plan fully carried out. The testator's will will be no more defeated by the purchase of the property by the Children's Hospital than it would be by foreclosure of a mortgage or the sale of property on execution or in any other way. Mr. Stark no doubt realized the futility of an attempt to reach out into the future and make this perpetual in a literal sense. The provision does require the trustee so long as it administers the fund to carry out and execute the will of the testator, and that is undoubtedly what was meant by the phrase "in perpetuity." Upon a careful study and consideration of the whole record, we have no difficulty in reaching the conclusion that the incorporators have devised a practical, workable plan which will prove of great advantage to the neglected and dependent children who may be its beneficiaries and have done it in a way to effectuate in all respects in the highest degree possible, in view of the limited means at their command, the wishes of the testator.

*By the Court.*—The judgment and order appealed from is affirmed.